FILED

May 10, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 12:12 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| LUIS ARMADO CASTRO-CONTRERAS, | ) Docket No.  2015-08-0016 |
| Claimant, | ) |
| v. | ) State File No. 4193-2015 |
| EMB QUALITY MASONRY, OVIDIO JUAREZ, LUCIO PENA, | ) |
| | ) Judge Jim Umsted |
| Respondents, | ) |
| and | ) |
| LIBERTY MUTUAL INS. CO., TRAVELERS INS. CO., | ) |
| Insurers. | ) |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on April 27, 2016, upon the Request for Expedited Hearing filed by the claimant, Luis Armado Castro-Contreras, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is which respondent, if any, must provide medical benefits for Mr. Contreras' alleged work-related pelvis and arm injuries. For the reasons set forth below, the Court finds that Respondent, EMB Quality Masonry, was Mr. Contreras' employer and is responsible for providing medical benefits for any work-related injuries Mr. Contreras sustained on October 24, 2014.[1]

### History of Claim

Mr. Contreras is a twenty-nine-year-old resident of Marshall County, Mississippi. For purposes of the Expedited Hearing, the parties stipulated that Mr. Contreras sustained injuries when he fell from scaffolding at the Coulter Hall job site on the University of Mississippi campus in Oxford, Mississippi on October 24, 2014. The parties further

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

stipulated that Carothers Construction, the general contractor on the Coulter Hall project, hired EMB to perform masonry work on the project.

At the Expedited Hearing, Mr. Contreras testified, through an interpreter, he was looking for work, and a friend told him to contact someone named "Manuel." Mr. Contreras communicated with Manuel[2] by telephone and text, and Manuel told Mr. Contreras to meet him at the Walmart in Oxford, Mississippi on October 23, 2014. Mr. Contreras met Manuel as agreed and began work on the Coulter Hall job site that day. According to Mr. Contreras, Manuel indicated he was an employee of EMB and was hiring Mr. Contreras as an employee of EMB. Manuel advised Mr. Contreras his rate of pay would be determined based on his skills as a worker. He received work instructions from Manuel, and his job duties at the site included mixing cement and generally assisting the masons.

The following day, at around 4:30 p.m., Mr. Contreras fell fifteen feet when one of the boards fell off the scaffolding on which he worked. Mr. Contreras indicated Manuel witnessed his fall and assisted Mr. Contreras to his truck after the fall. Mr. Contreras stated he asked Manuel for help and communicated with Manuel over the following week about getting medical treatment. Manuel kept telling him that someone would be coming to his home to take him to the hospital, but no one ever came.

When Mr. Contreras sought treatment on his own on November 1, 2014, EMB's president, Ernest Bush, visited him at the hospital. Mr. Bush brought an I-9 and W-4 form for Mr. Contreras to fill out. He also took a picture of Mr. Contreras' identification.

Mr. Contreras testified he never met or spoke to either Mr. Juarez or Mr. Pena. He further testified that Manuel's telephone number stopped working after Manuel learned the seriousness of Mr. Contreras' injuries.

Mr. Bush testified, on behalf of EMB, that he hired Ovidio Juarez and Lucio Pena as subcontractors to provide laborers for the Coulter Hall project. According to Mr. Bush, the laborers at the site on October 24, 2014, were employees of either Mr. Juarez or Mr. Pena. He stated the only EMB employee on the Coulter Hall job site on October 24, 2014, was Donald McGregor, who was a superintendent in charge of quality control. Mr. Bush indicated Mr. McGregor should not direct employees of a subcontractor. Mr. Bush specifically testified that Manuel, also known as Victor, was not an employee of EMB, though he admitted on cross-examination he did not know every EMB employee.

Mr. Bush stated that he was the only person who could hire, or authorize the hiring, of EMB employees. He testified that neither Mr. McGregor nor Victor had the authority to hire employees for EMB. Mr. Bush admitted, however, that sometimes

---

[2] Manuel was also known by the name "Victor." Manuel/Victor's last name is unknown.

workers walk up to the job site and are hired on the spot without completing employment paperwork first. Mr. Bush also admitted to bringing employment verification paperwork to the hospital when he went to visit Mr. Contreras and noted he knew Mr. Contreras was not an employee of EMB when he went to the hospital.

Mr. McGregor also testified during the Expedited Hearing on EMB's behalf. He stated he was onsite at the Coulter Hall project to ensure quality control. He stated he did not speak Spanish, so he used Victor as an interpreter to give instructions to the other laborers, who were all Spanish-speaking. He asserted, however, that Victor was not an EMB employee. He indicated he did not know for whom Victor worked, but acknowledged the only workers onsite worked for EMB, Mr. Juarez, or Mr. Pena. Mr. McGregor admitted he did not know and could not identify Mr. Juarez or Mr. Pena and did not know if they were on the work site. Mr. McGregor also admitted he worked with Victor on other projects. In addition, Mr. McGregor's October 2014 phone records show that Mr. McGregor spoke or texted with Victor nearly fifty times that month.

Mr. McGregor testified he received a call from Victor advising that someone fell at the job site, but Victor indicated that the person was not hurt and had not gone to the hospital. When Victor called back the next week to state that the worker wanted medical treatment, Mr. McGregor contacted Mr. Bush. Mr. McGregor testified that EMB provided the scaffolding from which Mr. Contreras fell, but did not know who ordered the scaffolding to come down.

## Findings of Fact and Conclusions of Law

### General Legal Principles

At an Expedited Hearing, Mr. Contreras need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

### Employee-Employer Status

The initial issue for determination is whether Mr. Contreras is a statutory

3

employee of any of the Respondents. Tennessee Code Annotated section 50-6-102(12)(A) defines employee as every person, whether lawfully or unlawfully employed, in the service of an employer, as defined by statute, under any contract of hire or apprenticeship, written or implied. "Employer" is defined as "any individual, firm, association or corporation . . . using the services of not less than five (5) persons for pay." Tenn. Code Ann. § 50-6-102(13) (2015).

Based on the evidence and testimony at the Expedited Hearing, this Court finds Mr. Contreras sought employment in October 2014, and received information from a friend to call a man named "Manuel."[3] Mr. Contreras called Victor, who told him to meet him at the Walmart store in Oxford, Mississippi on October 23, 2014, and Victor would take him to a job site to work for EMB. Mr. Contreras met Victor as instructed, and Victor took him to the Coulter Hall job site, where he worked with others to build a wall. Victor told Mr. Contreras his skills as a worker determined his rate of pay. All of the workers at this project spoke only Spanish, with the exception of Victor, who spoke English and Spanish. A supervisory employee of EMB, Mr. McGregor, was at the job site. He spoke English, not Spanish, and Victor would interpret all of his instructions to the workers.

This Court finds EMB had a contract with Carothers Construction to perform masonry work on the Coulter Hall project in Oxford, Mississippi. EMB provided equipment, including scaffolding.

EMB alleged that it subcontracted the work on this project to two subcontractors, namely Mr. Juarez and Mr. Pena. EMB contended it had only one employee on this project, Mr. McGregor, whose job was quality control. EMB claimed it did not hire Mr. Contreras or Victor. Mr. McGregor admitted he gave work instructions to Victor, who interpreted the instructions to the workers. Mr. McGregor additionally admitted he only communicated with the Hispanic workers through Victor. Mr. McGregor also admitted he did not know and could not identify Mr. Juarez or Mr. Pena, the alleged subcontractors. He did not know if they were on the work site.

Even though Mr. McGregor testified he did not know Victor, telephone records show he communicated by text message and telephone with Victor over fifty times in October 2014. EMB admitted it was not uncommon to hire workers on the job site, and the necessary paperwork completed later. The Court finds that Mr. McGregor, EMB's representative on the job site, had the authority to make these on-site hires, which later Mr. Bush approved. The Court finds EMB directly supervised this project through Mr. McGregor and Victor. It is not credible to believe that EMB sent Mr. McGregor to oversee non-English speaking workers without an interpreter. Victor was the interpreter for Mr. McGregor, and the Court finds he was an employee of EMB. Victor did not

---

[3] The man named "Manuel" was also known by the name "Victor." The name "Victor" will be used hereafter.

4

testify at the Expedited Hearing, as Mr. Contreras could not locate him, and Mr. Bush alleged he did not know Victor.

The Court further finds Mr. Contreras was an employee of EMB. He worked on the site with the knowledge and control of Mr. McGregor. Mr. Contreras never met or communicated with the alleged subcontractors, Mr. Juarez and Mr. Pena. The contract of employment with EMB can be viewed as either "express" by the explicit and direct words of Victor on behalf of EMB, or "implied" as a necessary deduction from the circumstances and conduct of the parties in allowing Mr. Contreras to work at the job site where Victor brought him.

The Court finds that Mr. Juarez or Mr. Pena did not employ Mr. Contreras. These alleged subcontractors did not appear at the Expedited Hearing. Neither EMB nor the insurance carriers could locate any such persons. Mr. McGregor, EMB's supervisor, did not know them or see them on the job site. Mr. Contreras never met or communicated with them. The only evidence that these persons actually existed is their names appearing on a certificate of insurance.

*Compensability and Medical Benefits*

The parties stipulated that Mr. Contreras fell from scaffolding on October 24, 2014, and the Court finds this fall occurred while Mr. Contreras was an employee of EMB. To be compensable, Mr. Contreras must show his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter."

With these legal principles in mind, the Court finds Mr. Contreras sustained an injury on October 24, 2014, at work after falling from scaffolding. Mr. Contreras gave immediate notice of his injury to Victor. Victor notified Mr. McGregor of the injury, and Mr. McGregor advised Mr. Bush, the owner of EMB. EMB and its insurer provided no authorized medical treatment, as it asserted Mr. Contreras was not their employee. The Court finds Mr. Contreras was an employee of EMB at the time of the fall and, as such, is entitled to a panel of physicians to treat any compensable injuries sustained in the fall.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Contreras was an employee of EMB at the time of his work injury on October 24, 2014.

2. EMB or its workers' compensation carrier shall provide Mr. Contreras reasonably

necessary medical treatment by providing a panel of physicians to examine and treat any compensable injuries as required by Tennessee Code Annotated section 50-6-204 (2015).

3. No ruling is made regarding entitlement to temporary disability benefits.

4. This matter is set for a Status Hearing on June 27, 2016, at 11:45 a.m. Central time.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 10th day of May, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

Status Conference:

A Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Luis Castro-Contreras;
2. Photograph of Coulter Hall job site;
3. Text messages between Mr. Contreras and Victor;
4. Copies of I-9 and W-4 paperwork;
5. EMB's Vendor Activity Reports;
6. Certificates of Insurance for Ovidio Juarez and Lucio Pena;
7. Premium and Wage Report with attached employee roster; and
8. Donald McGregor's October 2014 phone records.

Technical record:
1. Petition for Benefits Determination, filed January 21, 2015 (EMB);
2. Petition for Benefits Determination, filed October 1, 2015 (Juarez);
3. Petition for Benefits Determination, filed October 1, 2015 (Pena);
4. Dispute Certification Notice, filed March 2, 2015 (EMB);
5. Dispute Certification Notice, filed November 5, 2015 (Juarez);
6. Dispute Certification Notice, filed November 5, 2015 (Pena);
7. Request for Initial Hearing, filed April 21, 2015 (EMB);
8. Request for Initial Hearing, filed November 17, 2015 (Juarez);
9. Request for Initial Hearing, filed November 17, 2015 (Pena);
10. Order Consolidating Cases and Continuing Initial Hearing to Allow Employee to File a Request for Expedited Hearing, filed December 11, 2015;
11. Request for Expedited Hearing, filed February 24, 2016; and
12. Travelers' position statement, dated October 20, 2015.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 10th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|---|---|---|---|---|
| Bryce Ashby, Employee's Attorney | | | X | bryce@donatilaw.com |
| Shaterra Reed, Liberty Mutual's Attorney | | | X | shaterra.reed@libertymutual.com |
| S. Newton Anderson, Travelers' Attorney | | | X | sna@spicerfirm.com |
| Jared Renfroe, Travelers' Attorney | | | X | jrenfroe@spicerfirm.com |

Penny Patterson-Shrum, Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov